[Cite as *In re E.K.*, 2016-Ohio-5052.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

IN RE:                                    :
                                          :
    E.K.                                  :        Appellate Case No. 26897
                                          :
                                          :        Trial Court Case No. 2013-3784
                                          :
                                          :        (Juvenile Appeal from
                                          :         Common Pleas Court)
                                          :
                                          :

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of July, 2016.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MEAGAN D. WOODALL, Atty. Reg. No. 0093466, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
        Attorney for Appellee

DAWN S. GARRETT, Atty. Reg. No. 0055565, Garrett Law Office, 70 Birch Alley, Suite 240-24005, Beavercreek, Ohio 45440
        Attorney for Appellant, R.K.

. . . . . . . . . . . .

HALL, J.

{¶ 1} R.K. ("Father") appeals from the trial court's October 1, 2015 judgment entry terminating his parental rights and awarding appellee Montgomery County Children

Services ("MCCS") permanent custody of his minor child E.K.[1]

{¶ 2} Father's sole assignment of error states: "The Court's decision and order of permanent custody and denial of motion to extend temporary custody were error and constitute an abuse of discretion as such were made against the manifest weight of the evidence, there was insufficient evidence to support the underlying findings and the evidence presented failed to meet the requisite clear and convincing standard."

{¶ 3} The record reflects that MCCS filed complaints in May and June 2013 alleging that E.K. and two other children, T.P. and Z.D. (who are not the subject of the present action), were neglected and dependent. MCCS had become involved months earlier in February or March 2013 after Mother, with whom E.K. resided, was found unresponsive due to a drug overdose. In June 2013, the trial court granted MCCS interim temporary custody of E.K., who was placed in foster care. In September 2013, the trial court adjudicated E.K. neglected and dependent and awarded MCCS full temporary custody. Thereafter, in April 2014, MCCS moved for permanent custody pursuant to R.C. 2151.413. A magistrate held a December 2014 hearing on the motion. At the time of the hearing, E.K. was in the fourth grade. She remained in the same foster care where she had been placed with T.P. and Z.D., who also had been adjudicated neglected and dependent. Father did not appear for the hearing because he was serving a prison term for second-degree-felony child endangerment involving another child. Father was not scheduled to be released from prison until approximately October 2015. Counsel

---

[1] The trial court also terminated the parental rights of E.D. ("Mother"), who filed a separate appeal. On April 12, 2016, Mother's appellate counsel filed a notice of Mother's death and asked that her custody appeal be dismissed as moot. We granted that request in a June 24, 2016 decision and entry. Therefore, the matter is before us only on Father's appeal from the trial court's ruling.

appeared at the hearing on Father's behalf. In January 2015, the magistrate filed a decision awarding MCCS permanent custody of E.K. and the other children. (Doc. #41). Mother and Father separately filed objections. The trial court overruled all objections and adopted the magistrate's decision in an October 1, 2015 decision and judgment. (Doc. #6). This expedited appeal by Father followed.

{¶ 4} It is well settled that a trial court's decision to grant permanent custody and to terminate parental rights must be supported by clear and convincing evidence. *In re L.C.*, 2d Dist. Clark No. 2010 CA 90, 2011-Ohio-2066, ¶ 14. We apply an abuse-of-discretion standard, and we will not disturb such a decision on evidentiary grounds "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." (Citation omitted). *Id.*; *see also In re S.S.*, 2d Dist. Miami No. 2011-CA-07, 2011-Ohio-5697, ¶ 7. The phrase "abuse of discretion" implies a decision that is unreasonable, arbitrary, or unconscionable. *Id.* Therefore, a trial court's decision terminating parental rights cannot be reversed based on a mere difference of opinion or substitution of our judgment for that of the lower court. *Id.*

{¶ 5} Having identified our standard of review, we turn now to the substantive issues before us. The legal standards governing permanent-custody motions are as follows:

R.C. 2151.414 establishes a two-part test for courts to apply when determining a motion for permanent custody to a public services agency. The statute requires the court to find, by clear and convincing evidence, that: (1) granting permanent custody of the child to the agency is in the best

interest of the child; and (2) either the child (a) cannot be placed with either parent within a reasonable period of time or should not be placed with either parent if any one of the factors in R.C. 2151.414(E) are present; (b) is abandoned; (c) is orphaned and no relatives are able to take permanent custody of the child; or (d) has been in the temporary custody of one or more public or private children services agencies for twelve or more months of a consecutive twenty-two month period. * * *

R.C. 2151.414(D) directs the trial court to consider all relevant factors when determining the best interest of the child, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable.

*In re S.J.*, 2d Dist. Montgomery No. 25550, 2013-Ohio-2935, ¶ 14-15.

{¶ 6} Here the magistrate found, among other things, that MCCS had made "reasonable efforts" to prevent the removal of E.K. from the child's home, to eliminate the

continued removal of E.K., and to make it possible for the child to return home.[2] In accordance with R.C. 2151.414, the magistrate also found that E.K. could not be placed with either parent within a reasonable time and that an award of permanent custody to MCCS was in the child's best interest.

{¶ 7} In his objections and supplemental objections to the magistrate's decision below, Father raised two issues. First, he claimed the State had failed to prove that there were no relatives or non-relatives willing and able to accept legal custody of E.K. Second, he claimed the State had failed to prove that he "did not wish to parent the child and that he could not parent the child within 18 months of the dispositional hearing." (Doc. #38 at 1-2; Doc. #15 at 1-2). The trial court overruled both objections and also made all of the statutory findings necessary to award MCCS permanent custody. With regard to Father's specific objections, the trial court noted that Father had not maintained any contact or relationship with E.K. before his incarceration and had not made any effort to communicate with the child while in prison. The trial court also noted that the paternal grandmother never returned any of MCCS's phone calls, that a maternal aunt had taken herself out of consideration for legal custody, and that no other potential custodian had been identified. With regard to Father's second objection, the trial court reasoned:

---

[2] Although a "reasonable efforts" determination is mentioned in R.C. 2151.419, that statute does not apply to permanent-custody motions or to hearings on such motions. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 41. Strictly speaking, then, "reasonable efforts" is not part of the permanent-custody test. "However, except for some narrowly defined statutory exceptions, the state must still make reasonable efforts to reunify the family during the child-custody proceedings prior to the termination of parental rights. If the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time." *Id.* at ¶ 43. Here the magistrate and the trial court both made a "reasonable efforts" finding below. (Doc. #6 at 4; Doc. #41 at 1).

Father argues that the State failed to prove that he did not wish to parent the child and that he could not parent the child within eighteen months of the dispositional hearing. Father directs the Court to O.R.C. 2151.414(E)(12) which states that if a "parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing" that [the] court must find that the child cannot or should not be placed with the parent within a reasonable time. O.R.C. 2151.414(E)(12). The Motion for Permanent Custody was filed on April 14, 2014; the dispositional hearing occurred on December 11, 2014; Father is scheduled to be released from his incarceration on October 25, 2015. Father argues that his release date is well within eighteen months from the dispositional hearing date and therefore a second extension of temporary custody should be granted. This Court disagrees.

Father never expressed a willingness to have a relationship with his child. (Tr. 34:16) Nor has there been any indication that Father is willing to reengage with the child. (Tr. 35:3) MCCS sent Father letters in December 2013 and June 2014 to engage with him and let him know that the agency was involved. (Tr. 35:9) There was no response from Father. (Tr. 35:24) On one of the two occasions that [MCCS caseworker Kevin] Foley spoke with Father, Father indicated that he could not care for his child because of his pending incarceration on an endangering children charge. (Tr. 53:11)

Again, * * * Mr. Foley spoke with Father in May or June of 2013, before his prison sentence began, and told Father about the visitation times that were set up and told him that he was welcome to participate in the visitations. (Tr. 63:21, 64:3) Father never appeared at any of the visitations, nor did he ever request to see his child. (Tr. 64:1) Since assuming the case, neither [MCCS caseworker Mary] Haines nor the child have had any contact with Father. (Tr. 86:2, 87:16) Further, the child has indicated to Mr. Foley that she does not want any contact with her father. (Tr. 56:10) And while Father is expected to be released on October 25, 2015, there are many unknown variables that will accompany Father's release. Variables such as: the terms of Father's parole, whether Father will be able to secure and maintain a job, whether Father will be able to find housing, whether Father will be able to development [sic] a relationship with his child who has stated she does not want a relationship with him, etc. This child has already been in the custody of MCCS for eighteen months, and is in need of permanency. Moreover, even if the Court did agree with Father's O.R.C. 2151.414(E)(12) argument, the Court has found O.R.C. 2151.414(E)(1), (2), and (4) applicable. Any one of which requires the Court to find that the child cannot or should not be placed with either parent.

(Doc. # 6 at 12-13).

{¶ 8} In his sole assignment of error, Father raises the following three related issues, which he briefs and argues together:

**Issue 1**: When there remains time for a 6 month extension of temporary custody and a parent who has expressed an interest in parenting his child will be released from incarceration in that time, does the state fail to make reasonable efforts to reunify with that parent when the State seeks permanent custody before the parent even has an opportunity to work a case plan?

**Issue 2**: When a father has filed with the court expressing an interest in custody and opposing permanent custody to the state, is it error to find that "Father never expressed a willingness to have a relationship or reengage with his daughter" and that the state made reasonable efforts?

**Issue 3**: Was it possible that the child could have been placed with father within a reasonable time and that therefore there was a legally secure alternative permanency option to permanent custody?

(Appellant's brief at 2).

**{¶ 9}** The essence of Father's argument is that the trial court should have granted a second extension of temporary custody because he had filed a document with the court expressing an interest in obtaining custody and would have been released from prison soon enough for E.K. to be placed with him within a reasonable time. In connection with his argument, Father asserts that caseworker Foley was unaware that he had filed the written notice expressing an interest in the child. He also claims Foley could not say whether correspondence from MCCS to Father was sent to the correct prison. Under these circumstances, Father contends the record fails to establish that that the State made reasonable efforts to unite him with E.K., that the child could not be placed with him

within a reasonable time, or that an award of permanent custody to MCCS was in the child's best interest.

{¶ 10} Upon review, we find Father's assignment of error to be unpersuasive. The record does reflect that Father did file an April 29, 2014 one-page, pro se "Notice of Objection of the State's Recommendation Seeking Permanent Custody." In that filing he requested a reunification plan but indicated he would be incarcerated for an additional 18 months. He also requested appointment of counsel, and counsel was appointed to represent him on May 22, 2014. On July 21, 2014, Mother moved for additional time to complete drug treatment and to meet her case-plan objectives. Although he now complains about the trial court's failure to grant a second extension of temporary custody, Father never filed his own request for such an extension. In any event, we reject Father's argument that his filing of a document expressing an interest in the child and his anticipated release from prison in October 2015 undermined the trial court's decision to award MCCS permanent custody.

{¶ 11} Most of the testimony at the permanent-custody hearing concerned whether now-deceased Mother was in a position to care for E.K. and her other children. With regard to Father, Foley testified that he was Father's assigned caseworker from April 2013 until September 2014. He had spoken with Father in May and June 2013 by phone about placement options. The contact was by phone because when Foley went to Father's house on three occasions Father was not there and "wasn't complying with home visits." (Tr. at 33). Prior to being incarcerated for child endangering in November 2013, Father did not have a relationship with E.K. and had not expressed a willingness to have a relationship with the child. (*Id.* at 34). Father also did not seek any visits with E.K. (*Id.*

at 64). Although Foley invited Father to visit with the child, Father never showed up. (*Id.*). During Foley's time as caseworker, there was "no indication from [Father regarding his] willingness to reengage with his daughter[.]" (Id. at 35). Foley also testified that E.K., who was in the fourth grade at the time of the hearing, had expressed no interest in a relationship with Father. (*Id.* at 56).

**{¶ 12}** Caseworker Haines testified that she took over E.K.'s case in October 2014, which was shortly before the December 2014 permanent-custody hearing. She had not had any contact with Father, and E.K. had not mentioned having any contact with him. (*Id.* at 87, 97). Haines expressed her belief that placement with Father was not feasible because he would not be out of prison within a reasonable time and "after that, we're not sure [of] his ability to provide stable housing and income to meet [E.K.'s] needs." (*Id.* at 92).

**{¶ 13}** In short, the record fails to reveal the existence of any relationship between Father and E.K. when the neglect and dependency complaints were filed in May and June 2013. Nor does the record reflect that Father made any effort to establish a relationship with E.K. after the filing of the complaints and before he went to prison in November 2013. Finally, the record fails to show that Father did anything to establish a relationship with E.K. while in prison other than filing a one-page document in which he opposed MCCS's permanent-custody motion.

**{¶ 14}** We note too that a second extension of temporary custody would have done nothing to help Father establish a relationship with E.K. During the December 2014 permanent-custody hearing, caseworker Haines testified that she believed the parties technically were already "into the second extension period." (Tr. at 94). But even if we

assume, purely arguendo, that a new six-month extension of temporary custody could have been granted effective as of the magistrate's January 2015 permanent-custody decision, Father was not scheduled to be released for another eight months in October 2015. Therefore, the proposed second extension of temporary custody Father discusses on appeal still would have expired prior to his release.

{¶ 15} We also see little significance in the fact that caseworker Foley was unaware Father had filed a document with the court expressing an interest in obtaining custody. Regardless of his lack of knowledge of that legal document, Foley provided pertinent testimony about his efforts to get Father involved with E.K. prior to Father's imprisonment. As set forth above, Father also suggests that correspondence from MCCS may have been sent to the wrong prison after his incarceration. On this issue, Foley testified that he twice sent correspondence to Father in prison. (Tr. at 35). On cross examination, Foley identified a facility other than the one where Father was incarcerated as the place he sent the correspondence. (*Id.* at 54-55). When this mistake was pointed out by Father's counsel, Foley explained that it was "highly unlikely" the correspondence actually had been sent to the wrong prison. Instead, Foley stated that he may have misspoken during the hearing and "remembered the wrong city today." (*Id.* at 55). The trial court reasonably could have concluded based on Foley's testimony that the correspondence went to the correct prison and that Foley simply misspoke during the hearing and misidentified the facility where he actually sent the correspondence.

{¶ 16} We further are unpersuaded by Father's suggestion that E.K. could have been placed with him within a reasonable time based on R.C. 2151.414(E)(12). Under this particular subsection, a trial court "shall enter a finding that the child cannot be placed

with either parent within a reasonable time or should not be placed with either parent" if "[t]he parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing."

{¶ 17} In his objections below, Father argued that his release date was within 18 months of the dispositional hearing, meaning that R.C. 2151.414(E)(12) did not apply. It does not follow, however, that the trial court erred in finding that E.K. could not be placed with him within a reasonable time. As set forth above, the trial court found that E.K. could not be placed with Father within a reasonable time pursuant to other subsections, including R.C. 2151.414(E)(1) and (E)(4). Under subsection (E)(1), such a finding is proper where "[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." Under subsection (E)(4), such a finding is proper where "[t]he parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]"

{¶ 18} The record supports the trial court's findings under R.C. 2151.414(E)(1) and (E)(4) that E.K. could not be placed with Father within a reasonable time. In this regard, the trial court found that Father's case-plan objectives included commencing a

relationship with E.K. and demonstrating a willingness and ability to provide for the child. Father did nothing to establish a relationship with E.K. prior to his imprisonment, however, and did nothing thereafter other than file a one-page document with the court in which he opposed MCCS's motion. On the record before us, we find clear and convincing evidence that Father simply had no relationship at all with E.K. and that the child could not be placed with him within a reasonable time. At the time of the dispositional hearing, Father still had another ten months to serve in prison. Even if he desired to become involved with E.K. upon his release, the trial court was entitled to take into consideration the fact that Father and E.K. had no existing relationship on which to build and the fact that E.K. did not even want a relationship with him.

{¶ 19} Finally, although Father's objections below did not address the statutory best-interest factors (except perhaps whether a legally-secure placement could be achieved without a grant of permanent custody to MCCS), we see no error in the trial court's determination that an award of permanent custody to MCCS was in E.K.'s best interest. In its ruling, the trial court addressed the relevant best-interest factors in detail, examining E.K.'s interaction and relationship with caregivers, the child's wishes, the child's custodial history, and the child's need for a legally secure placement and whether it could be achieved without an award of permanent custody. (Doc. #6 at 9-13). We see no error in that aspect of the trial court's decision. Father's only specific argument on appeal with regard to the trial court's best-interest findings is that a legally-secure placement could be made with him and that the existing foster-care placement was not foster-to-adopt. (Appellant's brief at 5). As set forth above, however, the record supports the trial court's finding that E.K. could not be placed with Father within a reasonable time.

In addition, the fact that E.K.'s existing placement was not foster-to-adopt did not preclude awarding permanent custody to MCCS. *In re L.T.*, 2d Dist. Montgomery No. 26922, 2016-Ohio-605, ¶ 15.

{¶ 20} Based on our review of the record, and for the reasons set forth more fully above, we find clear and convincing evidence to support the trial court's award of permanent custody to MCCS.

{¶ 21} Father's assignment of error is overruled, and the judgment of the Montgomery County Common Pleas Court, Juvenile Division, is affirmed.

. . . . . . . . . . . .

DONOVAN, P.J., and FROELICH, J., concur.

Copies mailed to:

Mathias H. Heck
Meagan D. Woodall
Dawn S. Garrett
Sarah E. Michel
Connie Klayko
James Armstrong
Hon. Anthony Capizzi