[Cite as *In re S.F.*, 2013-Ohio-508.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

IN RE:                                    :

                                          :          Appellate Case No. 25318

           S.F.                      :

                                          :          Trial Court Case No. JC 2011-9117

                                          :

                                          :          (Juvenile Appeal from
                                          :           Common Pleas Court)

                                          :

                                          :

        . . . . . . . . . . .

## O P I N I O N

Rendered on the 15th day of February, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. #0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Appellee

CASSIE L. SCRENGI, Atty. Reg. #0084895, 130 West Second Street, Suite 840, Dayton, Ohio 45402
      Attorney for Appellant

. . . . . . . . . . . . .

FAIN, P.J.

{¶ 1}    Y.D. appeals from an order of the Montgomery County Juvenile Court overruling her objections to a decision of a magistrate and awarding permanent custody of

Y.D.'s daughter, S.F., to Montgomery County Children Services (Agency).

{¶ 2}　　Y.D. contends that the juvenile court abused its discretion in awarding permanent custody of her child to the Agency, because the record does not support a finding that permanent custody is in the best interest of the child.　She further contends that the Agency failed to make reasonable efforts at reunification and that it failed to explore potential placements with relatives or friends.　Finally, Y.D. contends that the juvenile court abused its discretion by awarding permanent custody, as opposed to extending temporary custody.

{¶ 3}　　We conclude that the record supports the juvenile court's decision to grant permanent custody of the child to the Agency.　We further conclude that the Agency made reasonable efforts at reunification and that it also sought information regarding other placement alternatives.　Finally, we conclude that the trial court did not abuse its discretion by awarding permanent custody, rather than extending temporary custody.　Accordingly, the judgment of the trial court is Affirmed.

## I.　The Course of Proceedings

{¶ 4}　　S.F. was born July 31, 2010 to Y.D.　No paternity has been established.　At the time of S.F.'s birth, Y.D. had an open case with the Agency regarding one of her other children.[1]　The Agency sought immediate temporary custody of S.F., and the child was placed in foster care.　The Agency, through caseworker Jeff Johnson, continued to work with Y.D. on her caseplan.　In June 2011, Y.D. regained legal custody of S.F., with the Agency exercising protective supervision.

---

[1]　According to the record, Y.D. lost custody of seven of her children, one of whom was in the permanent custody of the Agency at the time of S.F.'s birth, the other six had been placed with relatives, who obtained legal custody of the children.

{¶ 5} In November 2011, the Agency filed a new dependency complaint, when it learned that Y.D. was in jail awaiting transport to prison to begin serving a three-year sentence. The child was located at the home of a friend of Y.D. The child was again placed in foster care. Following a hearing, the child was adjudicated dependent, and the magistrate rendered a decision awarding permanent custody to the Agency. Y.D. filed objections. The trial court overruled the objections and entered an order awarding permanent custody. Y.D. appeals from the order of the trial court awarding permanent custody of S.F. to the Agency.

**II.   The Trial Court's Findings that Permanent Custody Is in the Best Interest**

**of the Child, and that the Agency Made Reasonable Efforts Toward**

**Reunification Are Supported by the Evidence in the Record;**

**and the Trial Court's Decision to Award Permanent Custody, as Opposed**

**to Extending Temporary Custody, Is Not an Abuse of Discretion**

{¶ 6} Y.D. asserts the following four assignments of error:

THE AGENCY FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT IT PROVIDED REASONABLE CASE PLANNING AND DILIGENT EFFORTS TO REUNIFY THE CHILDREN WITH MOTHER.

THE GRANT OF PERMANENT CUSTODY IS NOT IN THE BEST INTEREST OF THE CHILD.

THE AGENCY FAILED TO EXPLORE POTENTIAL PLACEMENTS FOR THE CHILD WHICH SHOULD HAVE PRECLUDED A FINDING OF PERMANENT CUSTODY.

THE TRIAL COURT ERRED WHEN IT GRANTED PERMANENT

CUSTODY WHEN A NON-PERMANENT DISPOSITION WAS

APPROPRIATE AND SUPPORTED BY TESTIMONY.

**{¶ 7}** Y.D. argues that the trial court erred by granting permanent custody of S.F. to the Agency, because there is no evidence that the Agency made reasonable efforts at reunification. She further argues that the Agency failed to explore potential placements of the child with friends and/or relatives. Y.D. claims that the trial court should have, at most, extended temporary custody rather than granting permanent custody. Finally, she argues that the trial court's decision is not in the best interest of the child.

**{¶ 8}** In Ohio, a trial court is authorized to terminate parental rights and grant permanent custody to the State upon a finding, by clear and convincing evidence, that permanent custody is in a child's best interest and that the child cannot be placed with a parent within a reasonable period of time or should not be placed with either parent. R.C. 2151.414(B)(2). The burden of proof is on the Agency. *In re L.C.*, 2d Dist. Clark No. 2010 CA 90, 2011-Ohio-2066, ¶ 14. The trial court must apply R.C. 2151.414(E), which identifies factors for determining whether a child cannot or should not be placed with either parent within a reasonable time. If a court finds, by clear and convincing evidence, that any one of the R.C. 2151.414(E) factors exist, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." *In re H.T. & Z.T.,* 2d Dist. Greene Nos. 10-CA-29, 10-CA-30, 2011-Ohio-1285, ¶ 22–23; *In re K.B.F.,* 2d Dist. Montgomery No. 24891, 2012-Ohio-1855, ¶ 51.

**{¶ 9}** The juvenile court found sections (1), (4), (11) and (12) of R.C. 2151.414(E) factors applicable in this case, and thus, found that the child cannot be placed with Y.D.

within a reasonable time.   We agree.

{¶ 10}    R.C. 2151.414(E)(1) directs the court to consider whether:

* * * notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the problems that initially caused the child to be placed outside the home. * * * [T]he court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 11}   Prior to the birth of S.F., Y.D. was engaged in a caseplan that required her to obtain stable housing and income, complete parenting classes, substance abuse treatment, anger management classes, and refrain from criminal activity.[2]   She substantially fulfilled all of the objectives.   However, in May 2010, she was jailed for marijuana use.   The use of marijuana violated the terms of her probation, which she was under following a 2009 conviction for Felonious Assault.   At the time of the dispositional hearing in this case, Y.D. was again incarcerated due to an October 2011 violation of her conditions of probation.   Y.D. was involved in a domestic violence dispute while she was intoxicated.[3]   Following a probation violation hearing, she was sentenced to a prison term of three years.

---

[2]   The agency had been periodically involved with Y.D. and her children for about sixteen years.

[3]   We note that Y.D. was conveyed from prison and was able to attend the hearing with her counsel.

{¶ 12} The juvenile court found that Y.D.'s conduct resulted in her failure to complete the case plan, despite the rehabilitative services offered by the Agency, because she continued to engage in the behavior that had caused the child to be removed from the home. The evidence in the record supports this conclusion.

{¶ 13} R.C. 2151.414(E)(4) requires consideration whether:

The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

{¶ 14} The juvenile court found that Y.D. "has demonstrated a history of criminal activity, substance abuse, and domestic violence which led to the initial removal of the child from the home. [Y.D.'s] current incarceration and her history of substance abuse and criminal behavior show an unwillingness to provide an adequate permanent home for the child." The evidence in record supports this conclusion.

{¶ 15} R.C. 2151.414(E)(11) requires the juvenile court to decide whether:

The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare,

and safety of the child.

{¶ 16}   In this case, Y.D. had her parental rights terminated with regard to seven of S.F.'s siblings.   The Agency has been involved with Y.D. for nearly half of her life and has provided numerous services in an attempt to reunify her with her various children, including S.F.   Despite these efforts, Y.D. has lost custody of her other seven children.   Thus, we find the record supports the juvenile court's determination that this section of R.C. 2151.414(E) is applicable.

{¶ 17}   The juvenile court also found the following provision of R.C. 2151.414(E)(12) applicable:

> The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.

{¶ 18}   The juvenile court noted that Y.D..'s projected release date is August 25, 2014 – more than eighteen months after the dispositional hearing.   The court concluded that Y.D. had failed to prove that she would be released prior to her scheduled release date.   We agree.

{¶ 19}   Once the juvenile court determines that there is clear and convincing evidence that one of the factors enumerated in R.C. 2151.414(E) apply, the court must turn to the issue of whether a grant of permanent custody to the Agency is in the best interest of the child.   To that end, the court must consider the following factors set forth in R.C. 2151.2151.414(D)(1):

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and

any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶ 20}** The juvenile court found that the child has been in custody of the Agency for all but "four months of her life." The court further found that the child is bonded with the mother, but that she is also bonded with, and thriving in the care of, the foster parents. The Guardian Ad Litem appointed to represent the child filed a report recommending that the Agency be awarded permanent custody of the child. Finally, the court found that the child's need for legally secure permanent placement would be best achieved by a grant of permanent custody to the Agency. We conclude that the record supports these findings.

**{¶ 21}** We now turn to Y.D.'s argument that the Agency did not make reasonable efforts at reunification. "Reasonable efforts are described as being a good faith effort which

is 'an honest, purposeful effort, free of malice and the desire to defraud or to seek an unconscionable advantage.' The issue is not whether [the Agency] could have done more, but whether it did enough to satisfy the 'reasonableness' standard under the statute." (Citations omitted.) *In re Secrest*, 2d Dist. Montgomery No. 19377, 2002-Ohio-7096, ¶ 13.

{¶ 22} As noted above, the Agency has been extensively involved with Y.D.. for more than a decade. During that time, the Agency worked to meet with Y.D. and review her caseplan with her. The Agency also helped her enroll in various programs and classes to help her deal with her substance abuse issues as well as her domestic violence issues. With the Agency's help, Y.D. substantially completed all of the classes in which she was enrolled. However, she continued to engage in the behavior that she went to classes to prevent. We conclude that the evidence in the record demonstrates reasonable efforts toward reunification of parent and child.

{¶ 23} Y.D.'s next argument is that the Agency did not make reasonable efforts at finding relatives and/or friends for potential placement of the child. This argument is without merit. This court has held that the consideration of whether a child can be placed with a relative is not a statutory requirement. *In re F. C.,* 2d Dist. Montgomery No. 23803, 2010–Ohio–3113, ¶ 24. "That possibility is a matter that ought to be considered in connection with the child's interaction and relationship with the child's parents, relatives, foster caregivers, out-of-home providers, and any other person who may significantly affect the child." *Id.*

{¶ 24} In any event, the record shows that the caseworker attempted to contact relatives, and even the friend with whom the Agency discovered the child following Y.D..'s

incarceration. None of the individuals whose names were provided by Y.D. were viable options for placement.

{¶ 25} Next, Y.D. argues that the juvenile court should have granted an extension of temporary custody as a less restrictive alternative to permanent custody. However, the record established that Y.D. is in prison for a three-year term. There is no evidence that she will be released prior to her scheduled release date, which is set for more than eighteen months after the date of the dispositional hearing. Furthermore, the evidence establishes that Y.D. has failed to resolve her substance abuse and domestic violence issues, despite the Agency's efforts in that regard. And the child is in need of legally secure placement. Keeping a child who has been in temporary custody for most of her life in that situation for two years longer does not meet the need for legally secure placement. The trial court did not abuse its discretion by awarding permanent custody rather than extending temporary custody.

{¶ 26} Finally, Y.D. contends that the record does not support a finding that the award of permanent custody is in the best interest of the child. As noted above, the juvenile court found otherwise, and this finding is supported by evidence in the record.

{¶ 27} We conclude that the juvenile court's decision is supported by the evidence in the record, and does not constitute an abuse of discretion. Accordingly, Y.D.'s assignments of error are overruled.

### III.   Conclusion

{¶ 28} All of Y.D.'s assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

FROELICH and HALL, JJ., concur.

Copies mailed to:

Mathias H. Heck
Carley J. Ingram
Cassie L. Screngi
Hon. Nick Kuntz