**[Cite as *In re S.J.*, 2013-Ohio-2935.]**

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

IN RE:

S.J., Jr.

Appellate Case No. 25550

Trial Court Case No. JC 2009-9919

(Juvenile Appeal from
 Common Pleas Court)

. . . . . . . . . . .

# O P I N I O N

Rendered on the _____3rd_____ day of _____July____, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MATTHEW T. CRAWFORD, Atty. Reg. #0089205, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
     Attorney for Appellee, MCCS

CHARLES W. SLICER, Atty. Reg. #0059927, Slicer Law Office, 111 West First Street, Suite 518, Dayton, Ohio 45402
     Attorney for Appellant, R.J.

. . . . . . . . . . . .

FAIN, P.J.

**{¶ 1}** R.J. appeals from an order of the Montgomery County Juvenile Court overruling her objections to a decision of a magistrate and awarding permanent custody of her son, S.J., to Montgomery County Children Services (Agency).

**{¶ 2}** R.J. contends that the juvenile court abused its discretion in awarding permanent custody of her child to the Agency, because the record does not support a finding that permanent custody is in the best interest of the child. She further contends that the Agency failed to make reasonable efforts at reunification and failed to explore potential placements with relatives or friends.

**{¶ 3}** We conclude that the record supports the juvenile court's decision to grant permanent custody of the child to the Agency. We further conclude that the Agency made reasonable efforts at reunification and sought information regarding relative and other placement alternatives. Accordingly, the judgment of the trial court is Affirmed.

## I.  The Course of Proceedings

**{¶ 4}** R.J. gave birth to S.J. on October 31, 2009. The child was immediately taken into the temporary custody of the Agency. In January 2010, the child was adjudicated dependent. The Agency filed a motion for permanent custody in November 2011. Hearings on the motion were held in March and May of 2012.

**{¶ 5}** During the hearings, evidence was presented that the child has substantial disabilities and is receiving services from Help Me Grow for feeding, occupational and speech therapy. Despite help from the Agency, R.J. appears unable to grasp the nature of the child's developmental delays.

**{¶ 6}** R.J. has a "history of homelessness" and must rely upon relatives for housing. At the time of the hearings, R.J. and the child's father were residing in the paternal grandmother's home. She is unemployed and has no source of income. Furthermore, she has mental health issues for which she needs long-term therapy and medication.

**{¶ 7}** R.J. consented to a case plan formulated by the Agency. The case plan required R.J. to: (1) attend therapy for mental health issues; (2) obtain her GED; (3) obtain and maintain stable housing and income; (4) attend visitation with the child; and (5) address personal hygiene issues.

**{¶ 8}** R.J. was referred to treatment for mental health issues in 2009. However, she did not engage in treatment until 2011, and her attendance at therapy has been inconsistent. Furthermore, she was required to obtain her GED, but failed to complete this objective. R.J. had no source of income and had no prospect of earning an income. She was denied Social Security benefits and failed to appeal from that initial denial.

**{¶ 9}** R.J. and the child's father were living with the father's mother. The Agency and GAL were not granted access to the home until March 2012, shortly before the hearings on the Agency's motion for permanent custody. Even then, the paternal grandmother did not permit access to the entire home; some rooms remained locked during the home visit. At the time of the home visit, the GAL noted that the home was not appropriate for the child and was infested with cockroaches. The GAL noted that there were "approximately 7 dogs and 5 cats" in the home with open litter boxes on both levels of the home. The evidence also indicates that the dogs are permitted to urinate and defecate inside the home. The home had exposed electrical wiring and missing plaster.

**{¶ 10}** The record demonstrates that from the time the Agency obtained temporary custody, visitation was scheduled to occur twice weekly. When R.J. failed to attend "a significant amount of visits," the visitation was reduced to one visit per week. Visits for January, February and March of 2011 were "fairly consistent." However, from April to September of 2011, R.J. only attended about half of her scheduled visitations. R.J. then presented a medical note to the Agency indicating that she "was contagious," and she did not visit from October of 2011 until December 20th. The Agency could not ascertain the exact nature of R.J.'s illness. During the first part of 2012, until the hearing in March, RJ. attended 75% of the visitations. But the Agency experienced an ongoing problem with R.J. leaving the visitation prior to the scheduled ending time.

**{¶ 11}** Finally, RJ. failed to rectify her issues with personal hygiene. The record shows that S.J. began to get eye infections following visitations. The Agency then demanded that R.J. shower before arriving for visitation and she wear clean clothes. The Agency informed R.J. that she needed to keep her fingernails clean, but R.J. stated that she had a "very hard time" getting her nails clean. Despite "multiple" conversations with R.J. about this requirement, the matter of cleanliness remained an issue.

**{¶ 12}** Following the hearing, the magistrate issued a decision granting permanent custody to the Agency. R.J. filed objections, which were overruled by the trial court. R.J. appeals.

**II. Evidence in the Record Supports the Trial Court's Finding that an Award of Permanent Custody to the Agency Is in the Child's Best Interest**

{¶ 13}   R.J.'s First Assignment of Error states as follows:

THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO MONTGOMERY COUNTY CHILDREN SERVICES BECAUSE THE AGENCY FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE MINOR CHILD.

{¶ 14}   R.C. 2151.414 establishes a two-part test for courts to apply when determining a motion for permanent custody to a public services agency. The statute requires the court to find, by clear and convincing evidence, that: (1) granting permanent custody of the child to the agency is in the best interest of the child; and (2) either the child (a) cannot be placed with either parent within a reasonable period of time or should not be placed with either parent if any one of the factors in R.C. 2151.414(E) are present; (b) is abandoned; (c) is orphaned and no relatives are able to take permanent custody of the child; or (d) has been in the temporary custody of one or more public or private children services agencies for twelve or more months of a consecutive twenty-two month period. *In re K.M.,* 8th Dist. Cuyahoga No. 98545, 2012–Ohio–6010, ¶ 8, citing R.C. 2151.414(B)(1).

{¶ 15}   R.C. 2151.414(D) directs the trial court to consider all relevant factors when determining the best interest of the child, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a

consecutive twenty-two-month period; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable.

{¶ 16} R.J. does not dispute that at the time of the hearing, the child had been in the temporary custody of the Agency for more than twelve months. She does dispute the trial court's finding that it is in S.J.'s best interest to grant permanent custody to the Agency.

{¶ 17} S.J. has resided with the same foster family since he was born and released from the hospital. The evidence supports a finding that S.J. is bonded with his foster family. The foster family is willing to adopt S.J. The evidence also shows that R.J. misses many of her scheduled visitations with the child, and that she leaves early when she does attend.

{¶ 18} Although the child is too young to express his wishes with regard to custody, the Guardian Ad Litem indicated that the child's best interests would be served by granting custody to the Agency. R.J. expresses the desire to retain custody of her son, but she failed to comply with the terms of her case plan, including visitation, which was designed to aid her in rectifying the problems that resulted in the Agency's intervention.

{¶ 19} The trial court found that a legally secure placement could not be achieved unless the Agency was granted permanent custody. Again, the record demonstrates that R.J. failed to comply with the terms of her case plan, which would have aided in reunification. Finally, the trial court noted that R.J. no longer retained legal custody of S.J.'s older half-brother, who was placed into the legal custody of his paternal grandmother.

{¶ 20}   A trial court's decision on termination "will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re A.U.,* 2d Dist. Montgomery No. 22264, 2008–Ohio–186, at ¶ 15 (citations omitted). Furthermore, "issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact." *In re A.J.S.,* 2d Dist. Miami No. 2007 CA 2, 2007–Ohio–3433, at ¶ 22. The "rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *In re J.Y.,* 2d Dist. Miami No. 07–CA–35, 2008–Ohio–3485, ¶ 33.

{¶ 21}   Our review of the record, transcript, and exhibits indicates that there is competent, credible evidence that would allow the trial court to conclude that the statutory elements for termination under R.C. 2151.414(B) have been satisfied.

{¶ 22}   The First Assignment of Error is overruled.


### III.   The Agency Made Reasonable Efforts to Reunify the Child with his Mother

{¶ 23}   R.J.'s Second Assignment of Error is as follows:

THE TRIAL COURT ERRED IN FINDING THAT MONTGOMERY COUNTY CHILDREN SERVICES BOARD HAD MADE EVERY REASONABLE EFFORT TO REUNIFY THE MINOR WITH

DEFENDANT-APPELLANT OR EXTENDED FAMILY.

**{¶ 24}** R.J. contends that the Agency failed to prove that it made reasonable efforts to reunify the child with her. She further contends that the Agency failed to explore possible relative placements for the child.

**{¶ 25}** The record demonstrates that the Agency developed the case plan in 2009. Due to the fact that R.J. is unable to read, the caseworker spent more than two hours explaining the plan to her. R.J. indicated that she understood the terms of the plan. The caseworker reviewed the terms of the plan with R.J. on a monthly basis. The Agency made the appropriate referrals for R.J. with regard to the objectives of her case plan. Despite this, R.J. failed to comply with her case plan. Based upon this record, we conclude that the Agency did demonstrate that it exercised reasonable efforts toward reunification.

**{¶ 26}** We next turn to the claim that the Agency did not explore alternate placement with friends or family. We have held that consideration whether a child can be placed with a relative is not required by the statute, although "[t]hat possibility is a matter that ought to be considered in connection with the child's interaction and relationship with the child's parents, relatives, foster caregivers, out-of-home providers, and any other person who may significantly affect the child." *In re S.F.,* 2d Dist. Montgomery No. 25318, 2013-Ohio-508, ¶ 23.

**{¶ 27}** In any event, in the case before us, consideration was given to the possibility of placement of the child with a relative; the caseworker attempted to contact relatives, as well as a family friend. An interstate home study was done regarding the child's maternal aunt who lived in Georgia. The results of this home study were negative, due to lack of income and poor home conditions. The maternal grandmother was contacted, but she eventually indicated that she was

not interested in assuming custody. The Agency conducted a home study with regard to the paternal grandmother, with whom R.J. and the father were residing. Again, the results of the home study were negative, because the house was unfit for habitation. Furthermore, the paternal grandmother has a diagnosis of schizophrenia rendering her unable to assume custody. Finally, the Agency contacted a friend of the family who had indicated interest in custody. That family moved during the pendency of the case, and did not provide the Agency with contact information.

{¶ 28} We conclude that there is clear and convincing evidence in this record that the Agency made reasonable efforts to reunify the child and R.J., and that the Agency did explore the possibility of placing the child with family or friends.

{¶ 29} The Second Assignment of Error is overruled.

## IV. Conclusion

{¶ 30} Both of R.J.'s assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

FROELICH and WELBAUM, JJ., concur.

Copies mailed to:

Mathias H. Heck
Matthew T. Crawford
Charles W. Slicer
Hon. Nick Kuntz