[Cite as *In re J.M.*, 2019-Ohio-1670.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | |
|---|---|
| IN RE: J.M. | : |
| | : |
| | :    Appellate Case No. 28201 |
| | : |
| | :    Trial Court Case No. 2015-5016 |
| | : |
| | :    (Appeal from Common Pleas Court- |
| | :    Juvenile Division) |
| | : |
| | : |

. . . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of May, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee, MCCS

LUCAS W. WILDER, Atty. Reg. No. 0074057, P.O. Box 574, Dayton, Ohio 45409
      Attorney for Defendant-Appellant, Mother

. . . . . . . . . . . .

HALL, J.

{¶ 1} Mother appeals from the trial court's judgment entry terminating her parental rights and awarding appellee Montgomery County Children Services ("MCCS") permanent custody of her child, J.M.

{¶ 2} In her sole assignment of error, Mother contends the trial court erred in finding (1) that the child could not be placed with either parent within a reasonable time or should not be placed with either parent, and (2) that awarding MCCS permanent custody was in the child's best interest.

{¶ 3} The record reflects that Mother gave birth to J.M. in May 2015. MCCS filed a complaint in August 2015 alleging that J.M was dependent and abused based on the child testing positive for heroin at birth. The trial court adjudicated J.M. dependent in September 2015. Thereafter, in February 2016, the trial court awarded temporary custody to the child's paternal grandmother. The trial court granted two extensions of temporary custody, and J.M. remained with paternal grandmother until April 28, 2017, when police conducted a drug raid of paternal grandmother's residence. Following the raid, J.M. was removed from paternal grandmother's care and placed in the temporary custody of MCCS, which found a foster home for the child. On June 29, 2017, MCCS moved for permanent custody. Mother and paternal great grandmother also moved for legal custody. Based on the evidence presented at a December 1, 2017 hearing, a magistrate awarded MCCS permanent custody. Mother filed timely objections. On October 24, 2018, the trial court filed a lengthy decision and judgment entry overruling Mother's objections and granting MCCS permanent custody. This appeal by Mother followed.

{¶ 4} A trial court's decision to grant permanent custody to the State and to terminate parental rights must be supported by clear and convincing evidence. *In re L.C.*,

2d Dist. Clark No. 2010 CA 90, 2011-Ohio-2066, ¶ 14. We apply an abuse-of-discretion standard, and we will not disturb such a decision on evidentiary grounds "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *Id.*; *see also In re S.S.*, 2d Dist. Miami No. 2011-CA-07, 2011-Ohio-5697, ¶ 7. The phrase "abuse of discretion" implies a decision that is unreasonable, arbitrary, or unconscionable. *In re S.S.* at ¶ 7. Therefore, a trial court's termination of parental rights cannot be reversed based on a mere difference of opinion or substitution of our judgment for that of the lower court.

{¶ 5} Having identified our standard of review, we turn now to the substantive issues before us. The standards governing permanent-custody motions are as follows:

R.C. 2151.414 establishes a two-part test for courts to apply when determining a motion for permanent custody to a public services agency. The statute requires the court to find, by clear and convincing evidence, that: (1) granting permanent custody of the child to the agency is in the best interest of the child; and (2) either the child (a) cannot be placed with either parent within a reasonable period of time or should not be placed with either parent if any one of the factors in R.C. 2151.414(E) are present; (b) is abandoned; (c) is orphaned and no relatives are able to take permanent custody of the child; or (d) has been in the temporary custody of one or more public or private children services agencies for twelve or more months of a consecutive twenty-two month period. * * *

R.C. 2151.414(D) directs the trial court to consider all relevant factors

when determining the best interest of the child, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable.

*In re S.J.*, 2d Dist. Montgomery No. 25550, 2013-Ohio-2935, ¶ 14-15.

{¶ 6} Here the trial court made the findings required to award MCCS permanent custody. Specifically, it found by clear and convincing evidence that J.M. could not be placed with either parent within a reasonable time. It also found that awarding permanent custody to MCCS was in the child's best interest.

{¶ 7} With regard to the first of the foregoing two findings, R.C. 2151.414(E) identifies 16 criteria to consider when determining whether a child cannot or should not be placed with either parent within a reasonable time. Here the trial court found that four of them applied. In particular, it found: (1) a failure continually and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home (R.C. 2151.414(E)(1)); (2) chemical dependency so severe that it made a parent unable to provide an adequate permanent home for the child at the present time and, as

anticipated, within one year after the hearing (R.C. 2151.414(E)(2)); (3) a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so or by other actions showing an unwillingness to provide an adequate permanent home (R.C. 2151.414(E)(4)); and (4) unwillingness for any reason to provide basic necessities for the child (R.C. 2151.414(E)(14)). The trial court made detailed findings on each of the foregoing issues.

{¶ 8} With regard to the best-interest issue, the trial court addressed the pertinent factors under R.C. 2151.414(D)(1) and made specific findings regarding: (1) J.M.'s interaction and interrelationship with parents, siblings, relatives, foster caregivers, and others; (2) the child's wishes, if applicable; (3) the child's custodial history; and (4) the child's need for a legally secure placement and whether that type of placement could be achieved without granting permanent custody to MCCS.

{¶ 9} On appeal, Mother first challenges the trial court's analysis of the statutory considerations as to whether a child cannot or should not be placed with either parent within a reasonable time.[1] Mother argues that several of those considerations "weigh" in her favor insofar as they are inapplicable. We note, however, that if any one or more of the R.C. 2151.414(E) findings exists, a trial court "shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either

---

[1] We note that Father has not appealed from the trial court's award of permanent custody to MCCS and its termination of his parental rights. At the time of the permanent-custody hearing, Father, a registered sex offender, was incarcerated and awaiting trial on federal charges involving distribution of heroin and fentanyl. (Tr. 41, 58-59). Those charges stemmed from the drug raid on paternal grandmother's house. Father did not cooperate with MCCS and made no effort to satisfy any case-plan objectives. (*Id.* at 57-59). For purposes of our analysis herein, we will focus on the trial court's findings as they relate to Mother and her appeal.

parent." *In re B.R.*, 2d Dist. Montgomery No. 28182, 2019-Ohio-644, ¶ 29. Thus, the R.C. 2151.414(E) findings found to exist are not considerations that we balance or "weigh" against other criteria that are nonexistent. The issue before us is whether the record contains clear and convincing evidence that at least one of those findings exists.

{¶ 10} In the remainder of her argument about the R.C. 2151.414(E) findings, Mother cites her progress on her case-plan objectives. Mother notes that she had satisfied several of those objectives prior to the hearing. Specifically, she notes that she had completed a mental-health assessment, completed a substance-abuse treatment program, obtained housing, visited with J.M. regularly, and completed parenting classes.

{¶ 11} In addressing Mother's failure to remedy the conditions causing J.M. to be removed from her, however, the trial court noted that a primary concern has been substance abuse. That aspect of Mother's case plan required her to complete a substance-abuse treatment program, including aftercare, and to follow recommendations. On that issue, the trial court noted that Mother had tested positive for amphetamine, methamphetamine, and cocaine as recently as August 11, 2017, which was less than four months before the permanent-custody hearing. The trial court made the following findings with citations to the record:

> Through Day-Mont, Mother was referred to the Sojourner program for her substance abuse issues, which is MCCS's primary concern. (Tr. 51, 65). MCCS's concern stems from Mother's long history of substance abuse, Mother's positive drug screen as recently as August 2017, and the child being born with drugs in her system. (Tr. 52, 65).
>
> In September 2015, before her involvement in Sojourner, Mother

tested positive for morphine and buprenorphine. (Tr. 72). The Court does note that in January 2017, May 2016, November 2015, and July 2015, Mother tested negative for illegal drugs. (Tr. 71). To [MCCS supervisor] Ms. Williams' knowledge, Mother never drug tested positive between September 2015 through August 2017. (Tr. 73-74). But Ms. Williams also notes that during that time frame there were large gaps in her treatment when Mother was not participating in any therapy. (Tr. 74). Ms. Williams also notes that during this time frame MCCS received reports that Mother was using drugs. (Tr. 74). MCCS remains concerned with Mother's drug and alcohol use because on August 11, 2017, Mother tested positive for amphetamine, methamphetamine, and cocaine, yet denies any drug use. (Tr. 53, 71).

While Mother followed through with the drug and alcohol assessment at Day-Mont, as well as with services at Day-Mont and received a certificate of completion from Day-Mont, she failed to complete aftercare. (Tr. 52, 65, 70). Ms. Williams has discussed monthly with Mother the need for her to complete aftercare. (Tr. 72). Mother always told Ms. Williams that she was going to get started on aftercare, but she never did. (Tr. 73). Mother's aftercare goal, which she developed herself with her therapist, was to obtain and maintain sobriety in order to reunify with the child and parent the child. (Tr. 73). The aftercare plan was to participate in case management five times a week; participate in individual counseling five to eight times a month; participate in group counseling nine to eleven times a month; and to

complete an annual diagnostic. (Tr. 73).

Mother's case plan objectives as to substance abuse [are] not complete.

(October 24, 2018 Decision and Judgment at 4).

**{¶ 12}** The trial court also noted that a significant case-plan objective was for Mother to obtain stable housing and employment. On those issues, the trial court made the following findings:

Both the housing and income objectives were discussed with Mother monthly. (Tr. 55). MCCS made referrals for both housing and income. (Tr. 55). Mother was referred to the Job Center. (Tr. 55). In addition, the Sojourner program assists individuals in obtaining both housing and income. (Tr. 55).

Mother obtained housing in April 2016, and has maintained that housing for over eighteen months. (Tr. 55, 70). However, Mother does not have bedding or other supplies for the child. (Tr. 56). MCCS considers Mother's home appropriate for the child. (Tr. 56). Mother's case plan objective to obtain and maintain housing is complete. (Tr. 56).

MCCS worked with Mother to help her follow through in finding employment. (Tr. 55). Mother has had several jobs throughout this case, however she does not currently have any verifiable income at this time. (Tr. 55, 56, 70). Mother's last verifiable income was in March/April 2016. (Tr. 57). Historically, Mother has not been able to maintain employment for more than two to three months at a time. (Tr. 56). There is no indication that

Mother is unable or unwilling to work. (Tr. 70). Mother's case plan objectives to obtain and maintain income [are] not complete.

(October 24, 2018 Decision and Judgment at 4).

{¶ 13} In light of Mother's long-standing substance-abuse problem, her failure to follow through with substance-abuse aftercare, her recent positive drug tests while denying any drug use, and her failure to maintain stable employment with any verifiable income, we find clear and convincing evidence to support the trial court's determination that Mother has failed continually and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. A primary concern when the trial court adjudicated J.M. dependent in September 2015 was Mother's drug use, which resulted in the child testing positive for heroin at birth. Almost two years later in August 2017, Mother tested positive for amphetamine, methamphetamine, and cocaine. She did so despite repeated agency efforts to obtain help for her drug problem and despite her knowledge that MCCS had moved for permanent custody in June 2017. Mother's income also was a concern for the agency. She had no income when MCCS became involved with her in 2015, and she still had no verifiable income at the time of the permanent-custody hearing in December 2017. (Tr. 55). Under these circumstances, we see no error in the trial court's finding under R.C. 2151.414(E)(1). That finding itself is sufficient to uphold the trial court's determination that J.M. cannot be placed with Mother within a reasonable time.

{¶ 14} The only remaining issue is whether awarding permanent custody to MCCS was in J.M.'s best interest. On that issue, Mother challenges the trial court's weighing of the statutory best-interest factors and argues that legal custody should have been

awarded to J.M.'s paternal great grandmother.

{¶ 15} Upon review, we note that the trial court engaged in a detailed discussion of the pertinent best-interest factors under R.C. 2151.414(D). With regard to the first factor, J.M.'s interaction and interrelationship with others, the trial court found that the child was happy and healthy in foster care. The trial court also noted that it was a foster-to-adopt placement. On the other hand, the trial court recognized Mother's bond with the child as well as the paternal great grandmother's relationship with the child. The trial court concluded that this factor weighed neither for nor against permanent custody to MCCS. The trial court likewise found that the next factor, the child's wishes, weighed neither for nor against permanent custody because J.M. was too young to express her wishes.

{¶ 16} The trial court's best-interest determination turned on the next two factors: the child's custodial history, and the child's need for a legally secure placement and whether that type of placement could be achieved without granting permanent custody to MCCS. With regard to custodial history, the trial court detailed the history of the case, including J.M.'s dependency adjudication after birth, temporary custody to paternal grandmother with two extensions, the drug raid on paternal grandmother's house, temporary custody to MCCS, Mother's recent drug use, and the child's failure to return to the care of either parent since the initial removal. The trial court concluded that this factor weighed in favor of permanent custody to MCCS.

{¶ 17} With regard to J.M.'s need for a legally secure placement and the availability of options other than permanent custody to MCCS, the trial court observed that the child had spent "a good portion of her life out of the custody of either parent." (October 24, 2018 Decision and Judgment at 8). The trial court found the child to be in "desperate need

of a legally secure, permanent placement." (*Id.*). The trial court left no stone unturned in addressing and rejecting placement options other than permanent custody to MCCS. It cited reasons to believe reunification with Mother or Father was not possible in the foreseeable future, including Mother's drug abuse and lack of income and Father's pending felony charges and failure to follow through on any of his case-plan objectives. (*Id.*). The trial court detailed MCCS's unsuccessful efforts to find a suitable relative to provide long-term care for J.M. (*Id.* at 8-9).

**{¶ 18}** The only relative Mother mentions on appeal is J.M.'s paternal great grandmother. The trial court noted, however, that the paternal great grandmother resided in one-bedroom apartment that MCCS found to be too small. Although the great grandmother expressed a willingness to move, her relocation efforts had been unsuccessful at the time of the hearing.[2] No home study had been conducted on the great grandmother's one-bedroom apartment. In addition, the great grandmother had "severe, persistent medical issues" that caused MCCS concern. (*Id.* at 9). The great grandmother also testified that she is disabled and has no income other than a disability check. (Tr. 97). Despite the great grandmother's interest in obtaining custody of J.M., the trial court was not required to favor placement with a relative if, after considering all of the evidence, it found the child's best interest served by an award of permanent custody to

---

[2] This court has upheld a trial court's consideration of the size of a prospective custodian's residence. The issue was addressed in *In re Z.W.*, 2d Dist. Montgomery No. 23657, 2010-Ohio-1619, as follows: "In her brief, [Mother] takes umbrage at the significance the trial court placed on the size of [maternal grandmother's] apartment, noting that a young child and the child's custodian sharing a one-bedroom apartment 'happens throughout America all the time.' In determining Z.W.'s best interests, the trial court was free to consider the respective advantages and disadvantages of the alternative proposed living arrangements, including size." *Id.* at ¶ 33.

MCCS. *In re E.S.*, 2d Dist. Clark No. 2016-CA-36, 2017-Ohio-219, ¶ 59; *In re Z.W.*, 2d Dist. Montgomery No. 23657, 2010-Ohio-1619, ¶ 29. The trial court made such a determination here, finding by clear and convincing evidence that it was in the best interest of J.M. to award permanent custody to MCCS, which had a permanency plan of adoption for the child. We see no error in this determination.

{¶ 19} Based on the reasoning set forth above, we overrule Mother's assignment of error and affirm the judgment of the Montgomery County Common Pleas Court.

. . . . . . . . . . . .

WELBAUM, P.J. and DONOVAN, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
Lucas W. Wilder
Kyle Lennen
Steven Abshire, GAL
Hon. Anthony Capizzi