**[Cite as *In re C.M.B.*, 2020-Ohio-126.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| IN RE: C.M.B., C.G., M.L.B. & C.J.G. | : | |
| | : | Appellate Case No. 28523 |
| | : | |
| | : | Trial Court Case Nos. 2016-6164 |
| | : | 2016-6166 |
| | : | 2016-6168 |
| | : | 2016-6169 |
| | : | |
| | : | (Appeal from Common Pleas |
| | | Court – Juvenile Division) |

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of January, 2020.

. . . . . . . . . . .

MATHIAS H. HECK JR. by LISA M. LIGHT, Atty. Reg. No. 0097348, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Appellee, State of Ohio

ROBERT ALAN BRENNER, P.O. Box 340214, Beavercreek, Ohio 45434
    Attorney for Appellant, Mother

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Mother appeals from the trial court's judgment entry terminating her parental rights and awarding appellee Montgomery County Children Services ("MCCS") permanent custody of four of her children.

{¶ 2} Mother advances two assignments of error. First, she contends the trial court erred in finding that awarding permanent custody to MCCS was in the children's best interest. Second, she claims the trial court erred in denying a request for a continuance so a home study could be completed for a relative in Florida.

{¶ 3} The record reflects that MCCS filed separate dependency complaints in October 2016 regarding each of the four children at issue. At the time of the complaints, the children were ages six, eight, nine, and eleven. The complaints alleged that the children were dependent based on (1) sexual abuse allegations against Mother's boyfriend with regard to another of Mother's children and (2) Mother's admitted mental-health issues as well as the agency's substance-abuse concerns. Following orders of interim temporary custody, the children were adjudicated dependent in November 2016 and MCCS obtained temporary custody. MCCS later obtained an extension of temporary custody. Before that extension expired, the agency moved for permanent custody of all four children in March 2018. Following two continuances of a scheduled dispositional hearing to allow a home study to be completed for the paternal grandmother in Florida, the matter was set for a November 8, 2018 dispositional hearing. The day before the hearing, the attorney for the children requested another continuance for the Florida home study to be completed. That request was denied. Oral requests for a continuance also were denied at the outset of the November 8, 2018 hearing. The only witnesses at the hearing were a caseworker and a psychologist, both of whom were called by MCCS.

Mother did not testify, nor did either of the two fathers of the children at issue. Based on the evidence presented, a magistrate awarded MCCS permanent custody of the four children. Mother timely objected. As relevant to the present appeal, Mother objected to the magistrate's finding that awarding permanent custody to MCCS was in the children's best interest. She also objected to the magistrate's denial of another continuance to allow the Florida home study to be completed.

{¶ 4} In an August 12, 2019 decision and judgment entry, the trial court overruled Mother's objections and awarded MCCS permanent custody of the children. In a ruling that was 17 single-spaced pages, the trial court independently examined the evidence presented at the dispositional hearing. It addressed and considered Mother's progress on her case-plan objectives. It also found that the children had been in MCCS's temporary custody for at least 12 of the preceding 22 months and that awarding permanent custody to the agency was in the children's best interest. In reaching its best-interest determination, the trial court analyzed and made findings with regard to each of the pertinent statutory factors. Finally, with regard to the continuance issue, the trial court noted that the permanent-custody hearing already had been continued twice to allow a Florida home study to be completed. The trial court noted that the children had been in MCCS's care for more than two years and that it remained unclear when the home study would be completed or whether the home would be approved. Under these circumstances, the trial court found a third continuance unwarranted.

{¶ 5} A trial court's decision to grant permanent custody to the State and to terminate parental rights must be supported by clear and convincing evidence. *In re L.C.*, 2d Dist. Clark No. 2010 CA 90, 2011-Ohio-2066, ¶ 14. We apply an abuse-of-discretion

standard, and we will not disturb such a decision on evidentiary grounds "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." (Citation omitted.) *Id.*; *see also In re S.S.*, 2d Dist. Miami No. 2011-CA-07, 2011-Ohio-5697, ¶ 7. The phrase "abuse of discretion" implies a decision that is unreasonable, arbitrary, or unconscionable. *S.S.* at ¶ 7. Therefore, a trial court's termination of parental rights cannot be reversed based on a mere difference of opinion or substitution of our judgment for that of the lower court. *Id.*

{¶ 6} Under R.C. 2151.414, the trial court was authorized to award permanent custody to MCCS based on a finding, by clear and convincing evidence, (1) that granting permanent custody to the agency was in the best interest of Mother's children and (2) that the children had been in the temporary custody of MCCS for 12 or more months of a consecutive 22-month period. With regard to the best-interest determination, R.C. 2151.414(D) directs the trial court to consider all relevant factors, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable. *In re S.J.*, 2d Dist. Montgomery No. 25550, 2013-Ohio-2935, ¶ 14-15.

{¶ 7} Here the trial court made the findings required to award MCCS permanent custody. Among other things, it found by clear and convincing evidence that Mother's children had been in MCCS's temporary custody for more than 12 months of a consecutive 22-month period and that an award of permanent custody to the agency was in the children's best interest. On appeal, Mother does not dispute the 12-in-22 finding, which is supported by the record. The only issue raised in Mother's first assignment of error is whether the trial court's best-interest finding was supported by clear and convincing evidence.[1]

{¶ 8} In its decision, the trial court made comprehensive findings on each of the statutory best-interest factors. It also assessed Mother's progress on each of her case-plan objectives. The trial court noted that MCCS initially became involved based on allegations that a sibling of the four children at issue was being sexually abused. An investigation resulted in that allegation being unsubstantiated. In the course of its investigation, however, MCCS learned of allegations that one of the four children involved in this case also was being sexually abused by Father Two, with whom Mother was residing. A caseworker described that allegation as being "indicated," meaning the agency had enough evidence to believe abuse occurred but not enough evidence to prove it. As set forth above, MCCS also had concerns about Mother's mental health and allegations of drug abuse. After MCCS became involved and filed its dependency

---

[1] The father of two of Mother's four children ("Father One") had no involvement with MCCS and took no part in the proceedings below although counsel did appear on his behalf. The father of the other two children ("Father Two") did participate in a case plan and did appear for the permanent-custody hearing. However, he did not testify at the hearing, did not file any objections to the magistrate's decision, and is not a party to this appeal by Mother.

complaints, the four children at issue were placed in foster care. They had been in foster care for more than two years at the time of the permanent-custody hearing.

{¶ 9} With regard to Mother's case-plan objectives, the trial court noted that she had completed a mental-health assessment, which included diagnoses of bipolar and schizoid affective disorders, and had followed recommendations, including medication. The trial court also noted that Mother had completed a drug and alcohol assessment and that she did not receive any follow-up recommendations. Mother also successfully had completed parenting classes and had visited her children consistently.

{¶ 10} The trial court's concerns with regard to Mother's case plan involved housing and income. The trial court made the following findings:

At the time of the hearing, Mother reported living with [Father Two] at his aunt's house. (Tr. 19). The caseworker stated that the aunt's residence is a two bedroom home and would not be enough space for four children. (Tr. 19). Mother was given information on Section 8 housing, but she did not qualify for [S]ection 8 housing, as she had owed money to a landlord following an eviction from the subsidized housing in September 2017. (Tr. 21). Mother's housing was appropriate from October 2016 through September 2017. (Tr. 21). After it was determined that Mother was not eligible for Section 8 housing, the caseworker referred Mother to PepZee Realty. (Tr. 55). The Agency reported that they would not be able to help Mother with her past bills. (Tr. 56). The caseworker discussed with Mother that she would need to pay Section 8 prior to the Agency being able to assist her with housing. (Tr. 56). The Agency has not made any referrals

for housing since that time. (Tr. 59).

Mother and [Father Two] acquired an apartment in "The Foundry," which the Agency was in hopes would be appropriate because it had enough space for all the children. (Tr. 21). However, [Father Two] lost his employment and they moved out. (Tr. 21-22). The parents have not had appropriate housing since that time. (Tr. 22). The Agency has concerns with Mother residing with [Father Two] due to allegations of sexual abuse that were indicated. (Tr. 28).

Mother has worked sporadically throughout the case, including jobs at McDonald's, Capital Cleaners, Mahle, Sears, and a few factory jobs. (Tr. 23). At the time of the hearing, Mother had just recently obtained a job at McDonald's. (Tr. 23). The Agency believed that Mother may qualify for Social Security Disability due to her mental health issues and made a referral through their family support worker to help Mother. (Tr. 23). Mother did not contact the family support worker back. (Tr. 23).

(August 12, 2019 Decision and Final Judgment Entry at 5-6.)

{¶ 11} Finally, with regard to the statutory best-interest factors, the trial court analyzed them as follows:[2]

Under R.C. 2151.414(D), the best interest of the child encompasses "all relevant factors," including:

*(1) The interaction and interrelationship of the child with the child's*

---

[2] Given the detailed nature of the trial court's findings and their significance to the outcome of Mother's appeal, we have elected to quote the trial court's best-interest analysis in full.

*parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;*

The MCCS caseworker observed the children to be bonded with their parents, and did not express any concerns with visitation. Both Mother and [Father Two] have visited the children consistently. The GAL also noted that the children are bonded with their parents, in addition to sharing a strong bond with each other. The children are bonded with Mother and have expressed to the caseworker that they would like to be returned to Mother. (Tr. 57).

Paternal grandmother * * * had brief contact with the children in 2017 while she resided in Ohio. [She] has continued to have some phone contact with the children through [Father Two]. [Two of the children] reported to the GAL that they know their paternal grandmother, and have been to her house before. (GAL Report, Pg. 3).

Each of the children are in a foster-to-adopt home. Each child represented to the GAL that they are doing well in their placements, and have received therapy services through the Agency.

*(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;*

According to the GAL Report filed on November 6, 2018, [two of the children] indicated that their first preference was to return to their parents' care, but both were willing to go to Florida if that wasn't possible. [The other

two children] indicated that they wished to return home to their parents as their first choice. Likewise, [two of the children] have stated to the GAL that they wish to be returned to Mother. [One of the children] also expressed willingness to go to Florida with her siblings if necessary so that she could remain with her siblings. The children have expressed to the caseworker that they would like to be returned to Mother. (Tr. 57).

*(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.*

It has already been determined that the children have been in the temporary custody of the Agency for twelve or more months of a consecutive twenty two month period. The children were removed from their parents' home on October 4, 2016 and subsequently placed into foster care. None of the children have ever returned to their parents' care. The children were initially all placed together in the same foster home. One child * * * was later placed in the temporary custody of her aunt * * *. However, the child returned to foster care in August 2017 where she has remained for the duration of the case. The other three children have all remained together in the same placement, though they switched homes in January 2018.

*(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;*

None of the parents have completed their case plan. [Father One] did not have contact with the Agency and did not engage in any services. It is apparent that [Father One] was not actively seeking reunification with his children.

Mother has completed various case plan objectives. She has completed a parent[ing] class and has been consistent in her mental health treatment. However, Mother has not had adequate housing since September 2017. At the time of the hearing, Mother continued to reside with [Father Two] and his aunt in a residence that was deemed inappropriate for the children, as it is a two bedroom home without adequate space for the children and all the adults. Mother's employment history has been inconsistent and unstable. Mother did not follow through with a referral for obtaining benefits.

[Father Two] completed various case plan objectives. However, [Father Two] also did not have adequate housing. Although [Father Two] completed a parenting and psychological evaluation, he failed to follow through with the recommendations. [Father Two] was recommended to complete a psychosexual evaluation due to the existence of multiple sexual abuse allegations. However, [Father Two] did not complete the evaluation.

In sum, the biggest remaining concerns are appropriate housing, income stability, and sexual abuse allegations made against [Father Two]. At the time of the hearing, little progress was made on remedying those concerns. The parents were still residing together with relatives. Both had

inconsistent employment histories. [Father Two] refused to complete a psychosexual evaluation.

[One child] has had issues with her grades, but was improving. (Tr. 42). She has been going to a therapist through Eastway, but is starting in the Red Zone program through her school. (Tr. 43). [Another child] receives therapy services through NYAP. (Tr. 43). [A third child] does not have any special needs, but sees a therapist through the school. (Tr. 44). [The fourth child] does not have any special needs or medical needs, but also sees a therapist. (Tr. 44).

[One child] is in a foster to adopt placement. (Tr. 45). The agency was looking into placing [a second child] into the same foster home * * *. (Tr. 45). [The two other children's] foster home in Cincinnati is a foster to adopt home. (Tr. 46).

Various relatives were looked at as potential placements for the children. [One child] was temporarily placed in the custody of an aunt * * *. However, [the aunt] expressed that she no longer wished to be the child's custodian. Maternal Grandmother * * * was also explored as a placement. However, her home study did not pass, as she was residing with a paramour whom sexual abuse allegations were indicated against. Paternal grandmother * * * expressed interest in taking [two of the children], and eventually all four children. On April 27, 2018, motions were filed by the Agency for an expedited home study to be completed. However, as of the time of the hearing, the home study had not been completed. It is uncertain

whether the home study was going to pass. The GAL stated that he could not opine as to whether the placement is safe or appropriate without the results of the home study. The GAL also stated in his report, "The grandmother's delay in making herself known as a possible placement causes me concern."

It is also important to note that at the time the permanent custody hearing was held, the time period for granting a second extension of temporary custody had expired. No party filed a motion for custody to the paternal grandmother, nor did the paternal grandmother seek intervention to file for custody in this matter. The paternal grandmother did not appear for the permanent custody hearing. Other than brief contact in 2017 and some phone contact through [Father Two], it does not appear that the paternal grandmother has had significant involvement in this matter. Consideration of placement of the child with a relative is not a statutory requirement. *In re F.C.*, 2010-Ohio-3113 (2d. Dist.), P24. Courts are not required to favor a relative if, after considering all the factors, it would be in the child's best interest for the agency to be granted permanent custody. *In re P.P.*, 2003-Ohio-1051 (2d. Dist.), P30.

*(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.*

The Court finds that [Father One] has abandoned the children pursuant to R.C. 2151.414(E)(10). Under Chapter 2151 of the Revised Code, a child shall be presumed abandoned when the parents of the child

have failed to visit or maintain contact with the child for more than ninety days. [Father One] has not had any contact with his children throughout the duration of this matter.

The GAL recommended that the agency's Motion for Permanent Custody be sustained as to all four children. The GAL stated in his report, "these children have been out of the care of their mother and [Father Two] for a considerable amount of time and at this time it does not appear to me that either parent separately or together are in a position to assume parental responsibility for any of these children." After an independent review of the available [sic] and in consideration of the factors outline[d] in R.C. 2151.414, the Court finds that the State presented clear and convincing evidence that it is in the children's best interest for permanent custody to be granted to MCCS. The objection is OVERRULED.

(August 12, 2019 Decision and Final Judgment Entry at 9-12.)

{¶ 12} In a one-page argument, Mother asserts that returning the children to her was in their best interest. She cites hearing testimony about the children being bonded with her and wanting to return home. She also cites her completion of several case-plan requirements. With regard to employment, Mother notes that she was working at the time of the hearing. She further notes that the caseworker's only concern about her shared residence was that it was too small to accommodate the four children. As for concerns about sexual abuse by Father Two, Mother stresses that the allegations were "indicated" but not proven. She also points out that Father Two denied the allegations and refused to undergo the required psychosexual assessment for that reason.

{¶ 13} Upon review, we find Mother's first assignment of error to be unpersuasive. The trial court appropriately considered the children's attachment to Mother and their wishes in its best-interest analysis. Although the children's wishes were relevant, the trial court was not obligated to follow them. The trial court also noted Mother's case-plan progress. Although Mother had completed several objectives, two major ones still caused MCCS concern, namely stable employment and housing. As set forth above, the trial court characterized Mother's employment history as "inconsistent and unstable." During MCCS's involvement in the case, Mother had obtained and lost several jobs. She had started working at McDonald's shortly before the hearing. The trial court also noted that Mother did not follow through on a referral for potential disability benefits. With regard to housing, the trial court noted that Mother was living with Father Two in a two-bedroom house he shared with his aunt. The house was too small to accommodate four children, and Mother had failed to obtain and maintain suitable housing throughout MCCS's involvement in the case. As for the sexual abuse allegations against Father Two, we agree with Mother that MCCS considered them "indicated" but not proven. In any event, MCCS did not take the position that the children absolutely could not reside with Mother and Father Two due to the allegations. As part of Father Two's case plan, MCCS simply wanted him to undergo a psychosexual evaluation to help alleviate the agency's concerns. The fact that Father Two denied the allegations did not compel MCCS to accept his denial at face value. Nor did his denial entitle Father Two to ignore his case-plan requirements.

{¶ 14} In short, the evidence presented at the permanent-custody hearing supported the trial court's findings and its analysis of the statutory best-interest factors.

The trial court's best-interest analysis reflects that it engaged in a sound reasoning process. The trial court acted within its discretion in finding that awarding permanent custody to MCCS was in the best interest of Mother's children. Accordingly, the first assignment of error is overruled.

{¶ 15} In her second assignment of error, Mother contends the trial court abused its discretion in denying a continuance for a home study to be completed on the paternal grandmother in Florida. Mother notes that the home-study delay was attributable in part to a hurricane. Mother also suggests that two of the four children possibly could have moved to Florida to live with the paternal grandmother if a home study were approved, and the other two children then could have been reunited with her in the two-bedroom residence she shared with two other adults.

{¶ 16} Upon review, we see no abuse of discretion in the trial court's denial of a continuance for the home study. The record reflects that the trial court previously had granted two continuances due to the pending Florida home study, resulting in the permanent-custody hearing already being delayed by approximately seven months. The third request for a continuance was untimely under the local rules, and it remained unclear if or when the Florida home study would be completed. The trial court noted that the children already had been in MCCS' care for more than two years. In the course of its ruling, the trial court additionally made the following observations:

> It is also important to note that at the time the permanent custody hearing was held, the time period for granting a second extension of temporary custody had expired. No party filed a motion for custody to the paternal grandmother, nor did the paternal grandmother seek intervention

to file for custody in his matter. The paternal grandmother did not appear for the permanent custody hearing. Other than brief contact in 2017 and some phone contact * * *, it does not appear that the paternal grandmother has had significant involvement in this matter. * * *

(August 12, 2019 Decision and Final Judgment Entry at 11.)

{¶ 17} Based on the circumstances before it, the trial court acted within its discretion in denying a third continuance of the permanent-custody hearing. The record persuades us that the trial court's resolution of the issue was reasonable and not an abuse of discretion. The second assignment of error is overruled.

{¶ 18} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck Jr.
Lisa M. Light
Robert Alan Brenner
Candi Rambo
Jeffrey Livingston
Christopher Deal
Randall Stump, GAL
Hon. Helen Wallace