[Cite as *In re K.M.W.*, 2021-Ohio-736.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | |
|---|---|
| IN RE: K.M.W., K.D.W., K.M.W. | : |
| | : |
| | :      Appellate Case No. 28971 |
| | : |
| | :      Trial Court Case Nos.   2016-4495 |
| | :                         2016-4496 |
| | :                         2018-0011 |
| | : |
| | :      (Appeal from Common Pleas |
| | :      Court – Juvenile Division) |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of March, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR. by ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
       Attorney for Appellee

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P.O. Box 340214, Beavercreek, Ohio 45434
       Attorney for Appellant, Mother

. . . . . . . . . . . .

HALL, J.

{¶ 1} Mother appeals from the trial court's judgment entry terminating her parental rights and awarding appellee Montgomery County Children Services ("MCCS") permanent custody of three of her children.

{¶ 2} In her sole assignment of error, Mother contends the trial court erred in finding that an award of permanent custody to MCCS was in the children's best interest.

{¶ 3} The record reflects that the children at issue are twins born in 2016 and a third child born in 2017. The twins were adjudicated dependent days after birth. The younger child was adjudicated dependent less than two months after birth. At the time of the permanent custody hearing, the legal father of the twins was serving a prison sentence for physically abusing one of them. MCCS had little communication with him, and he did not attempt to satisfy case-plan objectives. MCCS never located the father of the younger child despite making efforts to do so.

{¶ 4} Since being adjudicated dependent, the three children have been in various placements, including multiple foster placements and placement in the legal custody of a third-party for a period of time before being returned to MCCS's care. The agency moved for permanent custody in late 2019 and amended the motion in early 2020. Mother filed a competing motion for legal custody. The matter proceeded to a March 5, 2020 hearing before a magistrate. Neither father appeared for the hearing. Mother also failed to appear without explanation. At the time of the permanent-custody hearing, all three children were thriving in foster-to-adopt placements.

{¶ 5} The evidence presented at the hearing established that Mother had failed to complete her case-plan objectives and that she had not demonstrated an ability to care

for the children consistently. A guardian ad litem recommended granting permanent custody to MCCS as being in the best interest of the children, and the current foster parents expressed a desire to adopt. Following the hearing, the magistrate issued a decision granting permanent custody to MCCS. Mother filed objections. On November 9, 2020, the trial court overruled the objections and awarded MCCS permanent custody of the three children.

{¶ 6} Mother's sole argument on appeal is that an award of permanent custody to MCCS was not in the best interest of the children. Her entire substantive argument is as follows:

> The [permanent-custody hearing] testimony revealed that Mother completed a parenting class (Tr. 91). And Mother was appropriate at visits (Tr. 91-92). Mother also attended counseling (Tr. 93). Mother appeared to be taking her prescribed medications (Tr. 94-95). And Mother maintained suitable housing (Tr. 96, 134).

> The testimony also revealed that reunification with the mother was the goal (Tr. 133). And there were no substance abuse concerns with mother (Tr. 133-134). Mother was working (Tr. 137). And mother's work schedule conflicted with visiting the children (Tr. 141). Mother also had a hard time visiting her children because it was hard for her to have to say goodbye at the end of the visits (Tr. 139).

> Based on the record in this case, the trial court erred by granting the motion for permanent custody and the trial court's decision should be reversed.

(Appellant's brief at 2-3.)

{¶ 7} "R.C. 2151.414 establishes a two-part test for courts to apply when determining a motion for permanent custody to a public services agency." *In re S.J.*, 2d Dist. Montgomery No. 25550, 2013-Ohio-2935, ¶ 14. "The statute requires the court to find, by clear and convincing evidence, that: (1) granting permanent custody of the child to the agency is in the best interest of the child; and (2) either the child (a) cannot be placed with either parent within a reasonable period of time or should not be placed with either parent if any one of the factors in R.C. 2151.414(E) are present; (b) is abandoned; (c) is orphaned and no relatives are able to take permanent custody of the child; or (d) has been in the temporary custody of one or more public or private children services agencies for twelve or more months of a consecutive twenty-two month period. R.C. 2151.414(B)(1)." *Id.*

{¶ 8} In determining a child's best interest, R.C. 2151.414(D) directs the trial court to consider all relevant factors, including: "(1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable." *Id.* at ¶ 15.

{¶ 9} Here the trial court thoroughly reviewed and summarized the testimony

presented at the permanent-custody hearing. (November 9, 2020 Order at 4-13.) It then identified multiple factors to support its determination that Mother's children could not and should not be placed with either parent within a reasonable time. (*Id.* at 14-16.) The trial court also found that the children had been in MCCS's custody for 12 or more months of a consecutive 22-month period. (*Id.* at 17.) On appeal, Mother does not challenge either of these findings. As set forth above, she argues only that awarding MCCS permanent custody was not in the best interest of the children.

{¶ 10} On the best-interest issue, the trial court made specific findings on each of the relevant factors in R.C. 2151.414(D). (*Id.* at 16-19.) With regard to the interaction and interrelationship of the children with others, the trial court found that Mother had failed to visit any of the three children or maintain any contact with them for approximately seven months prior to the hearing. The children also were well integrated into their foster families and had established significant bonds with those families, each of which desired to adopt.

{¶ 11} After noting that the children were too young to express their own wishes, the trial court proceeded to examine their custodial history. It reasoned:

> [The twins] were removed from Mother's care in March 2017 and placed in the custody of non-relative [Ms. B.] Those children were removed from Ms. [B] in September 2017 and placed in foster care. Those children remained in foster care until placed in the legal custody of non-relative [L.P.] in February 2019. [The third child] was removed from Mother shortly after birth, and was placed in foster care in January 2018. All three children were removed from Ms. [P.] in August 2019 and re-entered foster care. [The twins] were placed with [K.D.] [The third child] was placed with [S.B.]

The children have been in the temporary custody for twelve or more months of a consecutive 22 month period at the time the Motion for Permanent Custody was filed. [The third child] entered Agency custody on January 2, 2018. Other than the approximately 6 months he was placed with [L.P.], the child has been in Agency custody. Therefore, the child has been in Agency custody for twelve or more months of a consecutive 22 month period. [The twins] entered Agency custody on September 12, 2017. Other than the approximate 6 months they were placed with [L.P.], the children have been in Agency custody. Therefore, the children have been in Agency custody for twelve or more months of a consecutive 22 month period.

(*Id.* at 17.)

{¶ 12} The trial court next addressed the children's need for a legally secure placement and whether it could be achieved without awarding MCCS permanent custody. On that issue, the trial court found:

The children are in need of a legally secure placement, which cannot be achieved without a grant of permanent custody to the Agency. The Agency has a lengthy history with Mother dating back to 2013, which includes other older siblings of these children that are not a part of this present matter. Mother has another child * * * who is in the legal custody of her father. (Tr. 127). Mother also has another child that is in the legal custody of a relative. (Tr. 127). Mother does not have custody of any of her children at this time. (Tr. 127). None of the children have ever returned to

Mother's custody since their initial removal from her care years prior.

Mother has failed to complete her case plan objectives. Mother has maintained housing since January 2018, which has been deemed appropriate by the Agency. Mother has had numerous different employers throughout the life of the case. That objective remains ongoing.

Mother has failed to complete her significant case plan objectives regarding mental health treatment. Mother did complete a parenting and psychological evaluation with Dr. Lilley in 2018. At that time, it was noted that progress was being made by Mother when she was active and consistent with her treatment, and it was recommended that Mother continue treatment and show stability if reunification was to be attempted. However, Mother has failed to complete the treatment recommendations. Mother has been sporadically engaged in mental health treatment throughout the case, and did not appear to be actively engaged at the time of the hearing. The Agency has been unable to verify any successful completion of treatment for Mother.

Furthermore, Mother has failed to visit and maintain contact with the children since August 2019. This is despite Mother supposedly adjusting her work schedule to accommodate the visitation and the Agency providing her bus passes to attend.

\* \* \*

Various placement options were explored and discounted, mostly due to conflicts those individuals had with Mother. The children were in the

custody of [L.P.] for approximately 6 months from February 2019 until August 2019. Ms. [P.] has not visited or maintained contact with the children since early December 2019. Ms. [P.] apparently expressed to the caseworker that she was no longer seeking custody of the children.

The children appear well cared for in their respective foster placements. The children are bonded to their foster families and are integrated into those families. [The twins] are in a foster-to-adopt placement with [K.D.] [The third child] is in a foster-to-adopt placement with [S.B.].

(*Id.* at 17-19.)

{¶ 13} Finally, with regard to other applicable factors, the trial court found that Mother effectively had abandoned the children by failing to visit or maintain any contact with them from August 2019 through the date of the March 2020 hearing. (*Id.* at 19.)

{¶ 14} After addressing the best-interest factors, the trial court summarized its findings as follows:

In accordance with R.C. 2151.414(E), there is clear and convincing evidence that the children cannot and should not be placed with any of the parents involved in a reasonable time. After weighing the factors under R.C. 2151.414(D), the Court finds that the State presented clear and convincing evidence that a grant of permanent custody to the Agency is in the children's best interest. Mother and both fathers are not able to adequately care for the children. Placement with Mother or either father is not possible within the reasonably foreseeable future, as the parents have failed continuously and repeatedly to substantially remedy the conditions causing the children

to be placed outside the home. All parents have failed to make significant progress on their case plan objectives. The Guardian Ad Litem recommended permanent custody be granted to MCCS.

The children are in need of a legally secure placement, which can only be achieved through a grant of permanent custody. The Court finds there are no willing or able relatives available as a potential placement for the children. The Agency's permanency plan is adoption, and the children are adoptable. Each child's current foster home has been identified as a potential adoptive placement.

(*Id.* at 19.)

{¶ 15} On appeal, Mother does not specifically address any of the statutory best-interest factors. Nor does she attempt to rebut the trial court's detailed analysis or findings. In a perfunctory argument, Mother simply cites portions of the evidence favorable to her. In particular, Mother notes that she (1) completed a parenting class, (2) acted appropriately at visits, (3) attended counseling, (4) appeared to be taking her medication, (5) maintained suitable housing, (6) had no substance-abuse problems, (7) was working, (8) had scheduling conflicts at work that interfered with visitation, and (9) had a hard time visiting her children because it was difficult to say goodbye.

{¶ 16} While the record contains testimony to support the foregoing assertions, Mother's brief is devoid of context. For example, although Mother generally did act appropriately at visits, she failed to visit the children at all for approximately seven months leading up to the permanent-custody hearing. Mother cites work scheduling conflicts as the reason for her non-visitation, but the record does little to support her claim. Mother's

job at Burger King caused the purported conflict. She obtained that job around November 2019 but had not visited her children since August 2019. (Tr. at 152-153.) Moreover, Mother claimed to have resolved the scheduling conflict in January 2020 but still failed to visit the children between then and the March 2020 hearing. (*Id.* at 122, 140.) On one occasion, Mother sought and obtained permission to arrive late for a visit but still failed to show. (*Id.* at 141-142.) She blamed a lack of transportation despite having been given bus tokens. (*Id.* at 142.) In addition to not visiting her children for months, Mother failed to have any other form of contact with them between August 2019 and the date of the permanent-custody hearing in March 2020. (*Id.* at 38, 122.) Notably, Mother subsequently failed to appear for the hearing without providing any notice or explanation to her attorney or the trial court. (*Id.* at 11.) We note too that Mother apparently had attended a parenting class and counseling, as she asserts on appeal. But she failed to complete a required mental-health assessment, which she had not even scheduled, rendering that portion of her case plan incomplete. (Tr. 112-114.) She also still needed to follow through with mental-health treatment, and her continued employment with Burger King remained unverified. (*Id.* at 118-119, 136.)

{¶ 17} In short, the isolated facts Mother cites do not demonstrate error in the trial court's permanent-custody decision. We defer to that decision "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re A.U.,* 2d Dist. Montgomery No. 22264, 2008-Ohio-186, ¶ 15. Our review of the record reveals competent, credible evidence from which the trial court could have found by clear and convincing evidence that granting permanent custody of the

children to MCCS was in their best interest.

{¶ 18} Mother's assignment of error is overruled, and the judgment of the Montgomery County Common Pleas Court, Juvenile Division, is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Elizabeth A. Ellis
Robert Alan Brenner
D.L-H.
Kelly Schroeder
Ryan Martin
Lindsay Deck, GAL
Hon. Helen Wallace